COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia

ANGELA DENISE SLADE

                                           MEMORANDUM OPINION[*] BY
v.   Record No. 0677-05-1               JUDGE D. ARTHUR KELSEY
                                              JANUARY 10, 2006

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Robert W. Curran, Judge Designate

Charles E. Haden for appellant.

Lesa J. Yeatts, Deputy City Attorney; Mark L. Williams,
Guardian *ad litem* for the minor child, for appellee.


Angela Slade appeals a decision of the circuit court terminating her residual parental

rights to her son, E.S., and approving an amendment of the foster care plan to authorize his

adoption.  Finding no error of law or insufficiency of evidence, we affirm.

I.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party

in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly

deducible therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616

S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App.

123, 128, 409 S.E.2d 460, 463 (1991)).

The record demonstrates that Slade has had an "on-going drug habit" and "problems

with drug addiction."  She served time in jail on a perjury conviction and later incurred a

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

penitentiary sentence for felony hit and run. Slade has had five children, the first when she was 13 years old. She has not maintained legal custody of any of them. Two are now adults. Of the remaining three children, Slade had her rights terminated with respect to the youngest (a 3-year-old at the time of the circuit court hearing). The other two children remain in foster care. The present termination proceeding involves the oldest of these three, E.S., who was 9 years old at the time of the circuit court hearing.

Prior to the termination of her parental rights to her youngest child in May 2004, Hampton Department of Social Services (HDSS) provided remedial services to Slade in hopes of reuniting her with the child. The circuit court found these services to be "reasonable and appropriate efforts" to accomplish this end. Despite these efforts, the court held, Slade was "unwilling or unable" to remedy in a timely manner the conditions that led to the child's placement in foster care. See Parental Rights Termination Order (May 11, 2004). Upon that finding, the court terminated Slade's residual parental rights to her youngest son pursuant to Code § 16.1-283(C)(2). Id.

In 2003, E.S. lived with his maternal grandmother. She, not Slade, had legal custody of him. HDSS, however, later learned that E.S. had been returned to Slade, who lived with a man with a prior record for child molestation. After receiving reports that Slade's boyfriend was sexually molesting E.S., HDSS prepared a "safety plan" requiring the grandmother to take E.S. "back [into] her physical care." In January 2004, however, E.S. was again found alone in an apartment with Slade's boyfriend despite the fact that the "safety plan" prohibited E.S. from living at Slade's house and with her boyfriend. HDSS then removed E.S. from Slade's home.

Following this incident, HDSS attempted to find a suitable relative to care for E.S. Slade was incarcerated shortly after E.S.'s removal. DNA testing ruled out the man claimed

by Slade to be E.S.'s father. Efforts to return E.S. to his grandmother were unsuccessful because of her "unwillingness or her lack of progress to . . . follow the recommendations of the Department and other service providers." No other relative could be identified to care for E.S.

HDSS therefore requested a foster care plan change in September of 2004 to recommend adoption and filed a petition to terminate Slade's residual parental rights. It was in E.S.'s best interests to do so, HDSS asserted, because of Slade's history of involvement "with drugs and the penal system," the agency's "prior history in working with her with the previous siblings," and the court's prior termination of Slade's residual parental rights to her youngest child. The juvenile and domestic relations district court granted both requests.

On *de novo* appeal to the circuit court, Slade admitted to an "on-going drug habit" and "problems with drug addiction" in the past. But things would be different in the future, she said, because drugs "weren't mainly the control of my life." In response to the report of sexual abuse of E.S. by her boyfriend, Slade testified: "I would never have entrusted my children if I knew [sic] of his past." As for the future, Slade said her incarceration had led to serious reflection on her part. She now felt confident she could competently parent E.S.

The guardian *ad litem* for E.S. recommended parental termination and adoption planning. Reaching the same conclusion, the circuit court terminated Slade's residual parental rights to E.S. pursuant to Code § 16.1-283(E)(i) and amended the foster care plan to authorize adoption pursuant to Code §§ 16.1-282 to 16.1-282.2.

II.

On appeal, Slade argues that (a) HDSS violated a statutory requirement to provide her with rehabilitative services in aid of reunification, and (b) insufficient evidence supports the

circuit court's decision to terminate her residual parental rights and to amend the foster care plan to authorize adoption. For the following reasons, we disagree with both assertions.

(a) REHABILITATION SERVICES IN AID OF REUNIFICATION

DSS's duty under Code § 16.1-281(B) to provide rehabilitation services in aid of reunification remains contingent upon its belief that the reunification goal would be "consistent with the child's health and safety." Toms, 46 Va. App. at 273, 616 S.E.2d at 773. If DSS concludes reunification is inconsistent with the child's health and safety, Code § 16.1-281(B) precludes the circuit court from overruling the administrative decision to forgo reunification efforts when, among other circumstances, a "parent has been through prior involuntary terminations." Id. at 273, 616 S.E.2d at 773 (citing 1998 Va. Acts, ch. 550 (amending Code § 16.1-281(B))).

Here, HDSS concluded that rehabilitation services in aid of reunification would be inconsistent with the child's health and safety. Because Slade had just been through a prior involuntary termination proceeding, the circuit court had no authority to order additional services be provided to her. It necessarily follows that the circuit court did not err in approving the adoption foster care plan for E.S. without first insisting that HDSS provide remedial services in aid of reunification.

A similar conclusion applies to the termination of Slade's residual parental rights to E.S. pursuant to Code § 16.1-283(E)(i). Subsection E addresses termination following a previous parental-rights termination, certain felony convictions, or other aggravated circumstances. See generally Kate D. O'Leary, Termination of Parental Rights in Virginia, 17 J. Civ. Litig. 17, 22 (2005). Like subsection B, but unlike subsection C(2), subsection E does not mandate rehabilitation services in aid of reunification as a precondition to termination. Toms, 46 Va. App. at 269-71, 616 S.E.2d at 771-72. While always a "relevant

circumstance," id. at 270, 616 S.E.2d at 771, the provision of rehabilitation services is not a legal prerequisite to a subsection E termination. The circuit court, therefore, did not err in failing to treat it as one.

(b) SUFFICIENCY OF THE EVIDENCE

Slade also challenges the sufficiency of the evidence supporting the circuit court's termination order under Code § 16.1-283(E)(i). When reviewing a decision to terminate parental rights, we presume the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990))). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). In its capacity as factfinder, therefore, the circuit court retains "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Because "the rights of parents may not be lightly severed," M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (citation omitted), clear and convincing evidence must establish the statutory grounds for termination, Fields, 46 Va. App. at 7, 614 S.E.2d at 659. In the end, the "child's best interests" remain the "paramount consideration" of the court. Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 262, 604 S.E.2d 737, 744 (2004) (citation omitted). Even on this issue, however, we cannot "substitute our judgment" for the circuit court's, Ward v.

<u>Commonwealth</u>, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991), but rather review the record only to determine if sufficient evidence supports it.

In this case, the circuit court terminated Slade's parental rights pursuant to Code § 16.1-283(E)(i). <u>Fields</u> explained DSS's burden of proof under subsection E(i) this way:

> Like a termination under Code § 16.1-283(C)(2), a termination pursuant to Code § 16.1-283(E)(i) must be based upon clear and convincing evidence that the action is in the best interests of the child. <u>See</u> Code § 16.1-283(E). In addition, the trial court must find the parent's rights to a sibling of the child previously had been terminated. <u>See</u> Code § 16.1-283(E)(i). Thus, under Code § 16.1-283(E)(i), the finding of the prior termination substitutes for a finding that the parent had failed to remedy the conditions leading to the child's foster care placement. Compare Code § 16.1-283(C) with Code § 16.1-283(E)(i).

<u>Fields</u>, 46 Va. App. at 8, 614 S.E.2d at 659 (footnote omitted).

The record supports the circuit court's decision to terminate under subsection E(i). Slade conceded that her residual parental rights to her youngest child had been previously terminated, thus leaving the circuit court to decide only whether clear and convincing evidence proved that termination of Slade's residual parental rights in this case was in E.S.'s best interests. On the best-interests issue, the record shows that — in addition to having been recently found unfit to parent her youngest child — Slade's ability to parent E.S. was impaired by her history of drug abuse, her criminality and incarceration, her exposure of E.S. to her boyfriend, and her failure to respond to prior rehabilitation efforts.

Slade argues these considerations address only historical events and should be given little, if any, weight in considering her present fitness to parent E.S. We disagree. As we noted in <u>Toms</u>, sometimes "the most reliable way to gauge a person's future actions is to examine those of [her] past." <u>Toms</u>, 46 Va. App. at 267-68, 616 S.E.2d at 770 (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators

of what the future may be expected to hold." Id. at 268, 616 S.E.2d at 770 (quoting Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997)).

Slade also argues that these considerations fail to take into account her anticipated release from incarceration and her expressed desire to be reunited with E.S. We again disagree. The record reflects that the circuit court gave her testimony serious consideration, but concluded that it "really had to do with what Miss Slade wanted" as opposed to what was "really in the best interest of the child." Given all the circumstances of this case, the court believed "it's very clear that something needs to be done about this child now." As has often been said, it is "clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990); see also Fields, 46 Va. App. at 11, 614 S.E.2d at 660.

In sum, the circuit court had sufficient factual grounds to conclude that termination of Slade's residual parental rights under Code § 16.1-283(E)(i) was in E.S.'s best interests.[1]

### III.

Finding no error of law in the circuit court's reasoning or insufficiency of evidence underlying its judgment, we affirm the court's decision to terminate Slade's residual parental rights to E.S. and to amend the foster care plan to authorize his adoption.

Affirmed.

---

[1] Slade also challenges the circuit court's companion order amending the HDSS foster care plan to authorize adoption. "Our decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3 (citing Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 497, 507 S.E.2d 87, 88 (1998), and Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996)).