COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Huff and Senior Judge Haley

ALICE THAXTON

v.      Record No. 1563-12-2

HALIFAX COUNTY DEPARTMENT
  OF SOCIAL SERVICES                                    MEMORANDUM OPINION[*]
                                                             PER CURIAM
JOHN THAXTON                                              MARCH 19, 2013

v.      Record No. 1705-12-2

HALIFAX COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Joel C. Cunningham, Judge

(Tracy L. Quackenbush, on brief), for appellant Alice Thaxton.

(James E. Midkiff, on brief), for appellant John Thaxton.

(Carol B. Gravitt; Brandon G. Hudson, Guardian *ad litem* for the
minor child; Gravitt & Gravitt, P.C., on briefs) for appellee.


        Alice Thaxton, mother, and John Thaxton, father, appellants herein, appeal the order of

termination of their residual parental rights to their son, J.T.  On appeal, these matters were

consolidated and share the record and appendices.  Both parents argue the trial court erred in finding

that the termination of their residual rights was in the best interests of the child.  Upon review of the

record and briefs of the parties, we conclude that these appeals are without merit.  Accordingly, we

summarily affirm the decisions of the trial court.  Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

When addressing matters concerning the custody and care of a child, this Court's paramount consideration is the child's best interests. On appeal, we presume that the trial court thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests. The trial court is vested with broad discretion in making decisions "necessary to guard and to foster a child's best interests." We will not disturb a trial court's factual findings on appeal unless plainly wrong or without evidence to support them.

Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 211, 597 S.E.2d 214, 217 (2004) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). "Furthermore, the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Viewed in this light, the evidence adduced at trial established that appellants had seven children. From 1997 to 2006, there were ten founded Child Protective Services complaints against appellants involving filthy home conditions, inadequate shelter and supervision, abuse and neglect, poor hygiene, and inadequate clothing. The Halifax County Department of Social Services (the Department) worked with appellants providing counseling, parenting classes, home visits, transportation, substance abuse treatment, as well as other services and support. J.T. had to be removed from the home three times. J.T.'s final removal from the home was in 2006 because of abuse and neglect and inadequate supervision. J.T. has had eight placements with foster families and relatives. After moving from relative and foster placements for the first twenty months after the final removal from the parents' home, J.T. lived with his great aunt and uncle. After approximately five years, the great aunt and uncle petitioned for release of custody in 2011. Following a brief stay in a previous foster family's home, J.T. was placed in the foster home of Herman and Vivian Sydnor, with two of his siblings, an older brother and sister.

The Department worked with the family for nine years. Although mother claimed she had done all that was required of her, the record shows that she never completed substance abuse treatment and refused drug testing as late as 2008. During the placement with the great aunt and uncle, the Department stopped working with appellants who demonstrated they were unable to remedy the conditions that resulted in the removal of the children.

At the time of the proceedings, two siblings were in foster homes in New York, the Sydnors had adopted the two siblings living with J.T., and another sibling had been adopted by another family. Father's residual parental rights to the brother the Sydnors adopted were involuntarily terminated on October 4, 2011.

When J.T. came into the Sydnors' home, he was defiant and had numerous behavioral problems in school and in the home. At the time of trial, J.T.'s behavior and performance at home and in school were markedly improved. The Sydnors testified they allowed appellants to spend time with J.T. and they each had a strong bond with the child. The Sydnors included appellants in parenting decisions. The Sydnors felt it was in the best interests of the child for appellants to continue to have contact with J.T. However, they also indicated it was in the child's best interests to not be separated from his brother and sister who were already in their home. J.T. had a particularly strong bond with the brother. When asked if it "would be harmful to take [J.T.] out of that environment," referencing their home, Mrs. Sydnor stated, "It would."

Appellants argue the Department's evidence demonstrated that it was not in the best interests of the child to terminate their residual parental rights. They maintain that termination was not appropriate when the foster parents agreed that mother and father had developed a strong bond with J.T. and should have a continuing role in his life. This argument ignores Mrs. Sydnor's testimony that, despite these facts, removing J.T. from his siblings would be "harmful" to him. Further, the record demonstrates that appellants had not responded to services and were unable to

- 3 -

remedy the conditions that led to removal in a reasonable period of time. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Id. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his or [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The Department spent nine years working with appellants, without rehabilitation. Appellants had minimal contact with J.T. during the five-year placement with the great aunt and uncle. When J.T. left his great aunt and uncle's home, the Department was not required to pursue futile additional services.

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." Petry v. Petry, 41 Va. App. 782, 793, 589 S.E.2d 458, 463 (2003). "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" Id. (citation omitted). "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Winfield v. Urquhart, 25 Va. App. 688, 696-97, 492 S.E.2d 464, 467 (1997) (citations omitted).

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 267-68, 616 S.E.2d 765, 770 (2005). As the trial court noted, "There comes a point when a child needs to know that he has a permanent place to go, he doesn't have to worry about whether he's going to be in this house next month . . . . That is unfair[;] it's just not good for the child."

Mother did not demonstrate her ability "within a reasonable period of time . . . to remedy substantially the conditions which led to or required continuation of the child's foster placement, notwithstanding the reasonable and appropriate efforts of [the Department]." Code § 16.1-283(C)(2). The record established father's residual parental rights to another sibling had

- 4 -

been involuntarily terminated.  Therefore, pursuant to Code § 16.1-283, subsections (C) and (E), the trial court only needed to further determine whether it was in the child's best interests to terminate their parental rights.

> Because "the rights of parents may not be lightly severed," M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 187, 583 S.E.2d 761, 769 (2003) (citation omitted), clear and convincing evidence must establish the statutory grounds for termination.  Fields [v. Dinwiddie County Dep't of Soc. Servs.], 46 Va. App. [1,] 7, 614 S.E.2d [656,] 659 [(2005)].  In the end, the "child's best interests" remain the "paramount consideration" of the court.  Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 262, 604 S.E.2d 737, 744 (2004) (citation omitted).  Even on this issue, however, we cannot "substitute our judgment" for the circuit court's, Ward v. Commonwealth, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991), but rather review the record only to determine if sufficient evidence supports it.

Toms, 46 Va. App. at 266-67, 616 S.E.2d at 770.  The Department showed by clear and convincing evidence that J.T. was thriving in the foster family's care, that his behavior was significantly improved, and that he had a strong bond with his siblings who had already been adopted by the foster parents.  Although it appeared that appellants were engaging in a more positive manner with J.T. and the Sydnors, nothing in the record suggested appellants had improved their circumstances sufficiently to maintain parental rights.  The trial court determined it was best for the child to have permanency, which appellants could not provide.  Thus, the record contains sufficient evidence that it was in the best interests of the child to terminate the residual parental rights of mother and father.

Accordingly, the trial court did not err by terminating the mother's and father's residual parental rights to J.T.  For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.